UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| KEVIN CAMERON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 4:20-cv-04079-SLD-JEH |
| BATTERY HANDLING SYSTEMS, INC., | ) ) ) |
| Defendant. | ) |

### ORDER

Before the Court is Defendant Battery Handling Systems, Inc.'s motion to dismiss Counts III and IV of Plaintiff Kevin Cameron's complaint, ECF No. 5. For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

### BACKGROUND[1]

Plaintiff was employed by a temporary work agency, Callos Resources. At the time of the events underlying this suit, he was working for Comprehensive Logistics Co., LLC ("Comprehensive Logistics") as a forklift operator at their facility in East Moline, Illinois. The facility had a dedicated section of the floor for changing forklift batteries, equipped with a hoist for lifting the batteries. The hoist included a Battery Lifting Beam manufactured by Defendant.

On April 6, 2018, Plaintiff went to this section of the floor to change the battery in a forklift. He attached the Battery Lifting Beam and engaged the hoist to place a recharged battery into the forklift. Once the battery had been raised by the Battery Lifting Beam, the brackets on one side of the Battery Lifting Beam broke. The battery fell and crushed Plaintiff's foot.

---

[1] At the motion to dismiss stage, the court "accept[s] as true all well-pleaded facts in the complaint, and draw[s] all reasonable inferences in [the plaintiff's] favor." *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). Thus, the factual background is drawn from Plaintiff's complaint, ECF No. 1-1 at 3–8.

1

Plaintiff brought suit against Defendant on February 21, 2020. Compl., ECF No. 1-1 at 3–8.[2] In his complaint, Plaintiff brings claims against Defendant for strict products liability (Count I), *id.* ¶¶ 6–9, negligence (Count II), *id.* ¶¶ 10–13, breach of the implied warranty of merchantability (Count III), *id.* ¶¶ 14–19, and breach of the implied warranty of fitness for a particular purpose (Count IV), *id.* ¶¶ 20–23. The action was removed to the Central District of Illinois on April 1, 2020. Not. Removal, ECF No. 1.[3] Defendant now moves to dismiss Counts III and IV for failure to state a claim. Def.'s Mot. Dismiss 2.

## DISCUSSION

### I.    Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are unnecessary, the complaint must have 'enough facts to state a claim to relief that is plausible on its face.'" *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277–78 (7th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (noting that courts also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When deciding on a motion to dismiss, "[t]he complaint's well-pleaded factual allegations, though not its legal conclusions, are assumed to be true," *Phillips v. Prudential Ins.*

---

[2] Because the complaint is included in the same document as the summons, page numbers for the complaint refer to the numbers assigned by the CM/ECF system.
[3] The Court has jurisdiction over this action on the basis of diversity. *See* Not. Removal 1, 2 (stating that parties are domiciled in different states and reasonably alleging that the amount in controversy exceeds $75,000).

*Co. of Am.*, 714 F.3d 1017, 1019 (7th Cir. 2013), and the court must also "draw all inferences in the light most favorable to the nonmoving party," *Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

## II. Analysis

Defendant moves to dismiss Count III (breach of the implied warranty of merchantability) and Count IV (breach of the implied warranty of fitness for a particular purpose) of Plaintiff's complaint for failure to state a claim. Def.'s Mot. Dismiss 2. The Court will address the motion to dismiss each Count in turn.

### a. Count III: Breach of the Implied Warranty of Merchantability

In Count III, Plaintiff alleges that Defendant breached the implied warranty of merchantability under the Uniform Commercial Code ("UCC"), codified in Illinois at 810 ILCS 5/2-314 ("section 2-314"),[4] by selling a defective Battery Lifting Beam not fit for its ordinary purpose, resulting in Plaintiff's injuries. Compl. ¶¶ 14–19. Defendant moves to dismiss this claim, arguing that the complaint fails to allege privity, as required to state a claim for breach of the implied warranty of merchantability under Illinois law.[5] Def.'s Mot. Dismiss 3. Because Plaintiff never alleges that Defendant directly sold the particular Battery Lifting Beam at issue to Plaintiff or to Comprehensive Logistics, Defendant contends, the claim must be dismissed. *Id*. at 4.

---

[4] 810 ILCS 5/2-314(1) states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."

[5] Neither party disputes that Illinois law applies. *See* Def.'s Mot. Dismiss 3–6 (arguing that the complaint fails to state a claim under Illinois law for either breach of the implied warranty of merchantability or breach of the implied warranty of fitness for a particular purpose); Pl.'s Resp. Mot. Dismiss 2–6, ECF No. 9 (citing to Illinois law in support of Plaintiff's argument).

3

The concept of privity encompasses two distinct elements, described as vertical privity and horizontal privity. "Vertical privity refers to the relationship between those who are in the distributive chain," while horizontal privity "refers to those who are not in the distributive chain of a product but who, nonetheless, use the product and retain a relationship with the purchaser, such as a member of the purchaser's family." *Szajna v. Gen. Motors Corp.*, 503 N.E.2d 760, 765 (Ill. 1986). In his complaint, Plaintiff asserts that the Comprehensive Logistics facility had a Battery Lifting Beam manufactured by Defendant, Compl. ¶ 3, and that Defendant had sold the product, *id*. ¶ 18. While Plaintiff never explicitly states from whom Comprehensive Logistics obtained the Battery Lifting Beam, the Court infers (for the purpose of this motion to dismiss) from the complaint's allegations of Defendant's sale of the Battery Lifting Beam and Comprehensive Logistics' ultimate possession of the product that Comprehensive Logistics was the ultimate buyer of a product that Defendant put into the stream of commerce.[6] Because Plaintiff does not allege that Comprehensive Logistics purchased the Battery Lifting Beam directly from Defendant, however, Plaintiff's claim for breach of the implied warranty of merchantability will only survive if the law does not require him to allege vertical privity between seller and buyer. Furthermore, because Plaintiff was merely working for the ultimate buyer when he was injured and did not purchase the Battery Lifting Beam himself, he will only

---

[6] This interpretation is bolstered by Plaintiff's response to the motion to dismiss, in which he positions Comprehensive Logistics as the "ultimate consumer" of the Battery Lifting Beam while disputing Defendant's argument that Plaintiff needed to allege a *direct* sale between Defendant and Comprehensive Logistics, Pl.'s Resp. Mot. Dismiss 4 ("Whether [the Battery Lifting Beam] was sold directly from Defendant to Comprehensive Logistics does not affect the analysis because the implied warranty that a product will be safe for its ordinary purpose is so fundamental that it carries through to the ultimate consumer."), and describes himself—while a temporary employee at Comprehensive Logistics—as a "third-party beneficiary to the *sale* of the product," *id*. (emphasis added). *See Early v. Bankers Life & Cas. Co*., 959 F.2d 75, 79 (7th Cir. 1992) ("[A] plaintiff is free, in defending against a motion to dismiss, to allege without evidentiary support any facts he pleases that are consistent with the complaint, in order to show that there is a state of facts within the scope of the complaint that if proved . . . would entitle him to judgment.").

4

prevail if the laws regarding horizontal privity allow workers operating products purchased by the companies for whom they are working to bring claims against a remote manufacturer.

    **i. Vertical Privity**

In Illinois, whether a complaint bringing claims for breach of the implied warranty of merchantability must plead vertical privity to survive a motion to dismiss depends on the nature of the injury alleged. Where a plaintiff claims breach of an implied warranty in a case involving only economic damages, "he or she must be in vertical privity of contract with the seller": only the immediate seller may be sued. *Mekertichian v. Mercedes-Benz U.S.A., L.L.C.*, 807 N.E.2d 1165, 1168 (Ill. App. Ct. 2004) (citing *Rothe v. Maloney Cadillac, Inc.*, 518 N.E.2d 1028, 1029–30 (Ill. 1988); *Szajna*, 503 N.E.2d at 767) (noting that "[a]lthough this vertical privity requirement has been challenged on a number of occasions, [the Illinois] supreme court has consistently declined to abolish the doctrine in cases where *purely economic damages* are sought" (emphasis added)). However, there is no such requirement in cases where the plaintiff seeks to recover for personal injuries: the Illinois Supreme Court established in *Berry v. G. D. Searle & Co.*, 309 N.E.2d 550 (Ill. 1974) that "privity is of no consequence when a buyer who purportedly has sustained personal injuries predicates recovery against a remote manufacturer for breach of an implied war[r]anty under the [UCC]." *Id*. at 556.

To reach this conclusion, the *Berry* court first determined that another provision of the UCC, 810 ILCS 5/2-318 ("section 2-318"), which provides that warranties extend to any family member, household member, or guest of a buyer of goods who may be reasonably expected to be affected by the goods,[7] is not an exhaustive list of nonprivity parties protected by the warranties:

---

[7] The full text of 810 ILCS 5/2-318 (Third Party Beneficiaries of Warranties Express or Implied) is:

    A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such

Illinois courts may expand the warranty protections to other parties. *Berry*, 309 N.E.2d at 556. Next, it noted that at the time of the UCC's adoption by Illinois, "privity was not required in cases involving personal injuries sustained from tainted food," and later, the Illinois Supreme Court "abolished the privity requirement in any action founded upon tort liability, recognizing that such liability and that created by implied warranty are similar." *Id*. Based on this, the court concluded that allegations of vertical privity are not necessary in personal injury cases. *Id*.

While *Berry* involved a claim for breach of the implied warranty of fitness for a particular purpose, codified at 810 ILCS 5/2-315 ("section 2-315"), *Berry*, 309 N.E.2d at 552, the court's reasoning for eliminating the privity requirement in the context of personal injury cases applies equally to claims for breach of the implied warranty of merchantability. Section 2-318 pertains to both section 2-314 and section 2-315, as do the comparisons to tainted food and tort liability cases. *See also Tamura, Inc. v. Sanyo Elec., Inc.*, 636 F. Supp. 1065, 1070–71 & n.10 (N.D. Ill. 1986) (citing *Berry* for the principle that privity is not a required element of a claim for breach of the implied warranty of merchantability in cases involving tortious injury to people or property and noting that while "[t]hat case involved the implied warranty of fitness for particular purpose[, t]here is no reason to treat the implied warranty of merchantability differently in this context" (citation omitted)), *overruled on other grounds by Bartholet v. Reishauer A.G.*, 953 F.2d 1073 (7th Cir. 1992). Thus, the Court finds that in Illinois, a plaintiff

---

person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this Section.

The comments to section 2-318 state that the version of the provision adopted by Illinois "is neutral and is not intended to enlarge or restrict the developing case law on whether the seller's warranties, given to his buyer who resells, extend to other persons in the distributive chain." 810 ILCS 5/2-318 cmt. n.3.

need not allege vertical privity to survive a motion to dismiss a claim for breach of the implied warranty of merchantability in a personal injury case.

Plaintiff here claims that he suffered serious personal (as well as pecuniary) injuries as a result of Defendant's alleged breach of the implied warranty of merchantability. Compl. ¶ 19. Because this case thus involves personal injury—not purely economic damages—he is not required to allege that Defendant directly sold the Battery Lifting Beam to Comprehensive Logistics.

### ii. Horizontal Privity

Having found that Plaintiff need not allege vertical privity in this case, the Court moves on to the issue of horizontal privity. Defendant argues that "even if [Plaintiff] could allege that [Defendant] sold the [Battery Lifting Beam] to Comprehensive Logistics, [Plaintiff] cannot satisfy the privity requirement under Illinois law because he was not employed by Comprehensive Logistics at the time of the alleged incident." Def.'s Mot. Dismiss 4. Because Plaintiff did not purchase the Battery Lifting Beam himself but instead was a temporary employee of the party who did, it is necessary to determine whether his relationship with Comprehensive Logistics is one that is intended to be covered by the implied warranties contained in the UCC, as adopted by Illinois.

The Illinois Supreme Court considers 2-318 a nonexhaustive list of potential nonprivity plaintiffs. *See Berry*, 309 N.E.2d at 556.[8] As Plaintiff notes, *see* Pl.'s Resp. Mot. Dismiss 3–4, ECF No. 9, appellate courts in Illinois have found that where an employee of the ultimate purchaser of a product is personally injured, that employee may bring a claim for breach of

---

[8] Unlike this case, *Berry* involved a buyer who was injured by a remote manufacturer's product. *See Berry*, 309 N.E.2d at 552. Thus, the Court takes *Berry*'s declaration that "privity is of no consequence" in personal injury implied warranty cases as direct precedent only on the issue of vertical privity. *See id.* at 556.

warranty because he is covered under the warranty provisions of the UCC. *See Whitaker v. Lian Feng Mach. Co.*, 509 N.E.2d 591, 595 (Ill. App. Ct. 1987) (holding that implied warranties "extend[] to any employee of a purchaser who is injured in the use of the goods, as long as the safety of that employee in the use of the goods was either explicitly or implicitly part of the basis of the bargain when the employer purchased the goods" and pointing out that when the ultimate purchaser is a company, it necessarily "s[eeks] the safety on behalf of its employees who were to use the [product]"); *Wheeler v. Sunbelt Tool Co.*, 537 N.E.2d 1332, 1339–40 (Ill. App. Ct. 1989) (citing to *Whitaker* to conclude that the employee of the purchaser of the tool at issue was within the class of third-party beneficiaries who could bring a breach of warranty action against a remote manufacturer).

However, an Illinois appellate court also found that UCC warranties did not extend to a truck driver for a third-party delivery company that contracted with the defendant to deliver the defendant's product to a buyer because at the time of the driver's injury, he "was acting within the course of his employment with [the third-party delivery company]." *Lukwinski v. Stone Container Corp.*, 726 N.E.2d 665, 672 (Ill. App. Ct. 2000). The court considered *Whitaker* distinguishable because the driver was engaging in activities pursuant to his role as a delivery truck driver (i.e., unloading the goods) and was therefore not effectively acting as an employee of the buyer of the product. *Id.* And in another Illinois appellate decision, the court declined to extend warranty protection to a plaintiff working for a subcontractor to install a wood roof truss system when it was the general contractor who had hired the defendant to design and build the system that ultimately injured the plaintiff. *Frank v. Edward Hines Lumber Co.*, 761 N.E.2d 1257, 1261, 1267–68 (Ill. App. Ct. 2001). The court acknowledged that *Whitaker* extended

warranty protections to employees of buyers but found the situation at hand instead to be "factually similar to *Lukwinski*." *Id*. at 1267.

The Court finds that Plaintiff's situation is closer to *Whitaker* than to *Lukwinski* and *Frank*. While it is true that Plaintiff was employed by a temporary work agency as opposed to by Comprehensive Logistics itself, he was not performing a task that was peripheral to the activity at Comprehensive Logistics' facility, such as unloading goods after delivering them. Nor was he—based on the allegations of the complaint—under the employ of an intermediary business who was hired to perform a specific service for Comprehensive Logistics in which Comprehensive Logistics had little direct participation, as in *Frank*. Rather, he was working at the facility as a forklift operator—a central part of the facility's activity, as evidenced by the fact that the facility "had an entire section of the floor dedicated to changing fork lift batteries," Compl. ¶ 3—and was exactly the party for whom Comprehensive Logistics had obtained the Battery Lifting Beam, a tool whose purpose was to aid forklift operators in changing the batteries of their forklifts, *id*. Thus, his "safety . . . in the use of the goods was either explicitly or implicitly part of the basis of the bargain when [Comprehensive Logistics] purchased the [Battery Lifting Beam]," *Whitaker*, 509 N.E.2d at 595. The Court concludes that Plaintiff, in his role as forklift operator for Comprehensive Logistics, is covered by the implied warranty provisions of the UCC, as adopted by Illinois.

Because the implied warranty of merchantability extends to Plaintiff as a temporary employee of the ultimate purchaser of the Battery Lifting Beam, and because he is not required to allege vertical privity, the motion to dismiss Count III for failure to allege privity is denied.

### b. Count IV: Breach of the Implied Warranty of Fitness for a Particular Purpose

In Count IV, Plaintiff alleges that Defendant breached the implied warranty of fitness for a particular purpose, 810 ILCS 5/2-315,[9] asserting that Plaintiff, "as the user of the . . . product, relied upon representations made by Defendant . . . regarding the particular use of the Battery Lifting Beam" but that it "was not suitable for the particular purpose for which it was manufactured"—that is, changing fork lift batteries. Compl. ¶¶ 21, 22. Defendant moves to dismiss Count IV on two grounds. First, it seeks dismissal of the claim because of a failure to allege privity. Def.'s Mot. Dismiss 4–5. Second, it argues that the claim must be dismissed because Plaintiff has not alleged that the Battery Lifting Beam was used for a particular purpose or that Defendant knew of any such alleged purpose. *Id.* at 5–6.

### i. Privity

For the same reasons that it believes Count III must be dismissed, Defendant argues that the Court should dismiss Count IV because the complaint "fails to allege that [Defendant] was involved in a relevant sale of this particular Battery Lifting Beam to [Plaintiff] or his employer." *Id.* at 4. Count IV, like Count III, involves a claim for breach of implied warranty. Thus, the Court's reasoning as to why Plaintiff need not allege privity for Count III to survive the motion to dismiss applies in equal measure to Count IV. *See supra* II(a). Because Plaintiff brings this case to recover for personal injuries allegedly sustained while operating the Battery Lifting Beam, making allegations of vertical privity unnecessary, *see Berry*, 309 N.E.2d at 556, and because he was at that time working for the ultimate buyer of the product, Comprehensive Logistics, and, as such, was covered by UCC warranties, *see Whitaker*, 509 N.E.2d at 595, an

---

[9] 810 ILCS 5/2-315 (Implied Warranty: Fitness for Particular Purpose) provides that "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose."

allegation of privity between Plaintiff and Defendant is not required at this stage with regard to the claim for breach of the implied warranty of fitness for a particular purpose.  The motion to dismiss Count IV for failure to allege privity is therefore denied.

    **ii. Particular Purpose**

Defendant additionally moves to dismiss Count IV because of Plaintiff's failure to allege that the Battery Lifting Beam was used for a particular purpose and that this purpose was communicated to Defendant.  Def.'s Mot. Dismiss 5–6.

For a claim for breach of the implied warranty of fitness for a particular purpose to survive a motion to dismiss, the plaintiff must allege "(1) a sale of goods, (2) that the seller had reason to know of any particular purpose for which the goods are required, (3) that plaintiff, as buyer of the goods, was relying upon seller's skills or judgment to select suitable goods, and (4) that the goods were not fit for the particular purpose for which they were used." *Maldonado v. Creative Woodworking Concepts, Inc.*, 796 N.E.2d 662, 666 (Ill. App. Ct. 2003).  As the comments to the statute make clear, "[a] 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business."  810 ILCS 5/2-315 cmt. n.2; *see also Indus. Hard Chrome, Ltd. v. Hetran, Inc.*, 64 F. Supp. 2d 741, 746 (N.D. Ill. 1999) ("For such a warranty to exist, the goods must be for a purpose other than their ordinary use.").  Thus, allegations that a manufacturer knew that a product would be put to its ordinary use by the injured party—as opposed to another particular purpose—will not suffice to state a claim for breach of the implied warranty of fitness for a particular purpose.

In his complaint, Plaintiff alleges that the Battery Lifting Beam was used to raise forklift batteries as part of the process of changing them and that he was actually attempting to change

the battery of a forklift when he was injured.  Compl. ¶¶ 3–5.  In Count IV, he pleads reliance on Defendant's "skill and knowledge to manufacture goods suitable for changing fork lift machine batteries."  *Id*. ¶ 21.  Defendant argues that this alleged purpose—lifting forklift batteries—is "a general purpose, not a particular purpose for the beam," and thus the complaint "fails to allege that Comprehensive Logistics had any reason for allegedly purchasing the lifting beam that is particular to its business and distinct from the ordinary purposes for which such lifting beams are used."  Def.'s Mot. Dismiss 6.  And indeed, Plaintiff himself states in his response to Defendant's motion that he "utilized the Battery Lifting Beam in the ordinary way it was intended to be used," Pl.'s Resp. Mot. Dismiss 1, that "[t]here is no question that Defendant knew the particular purpose for which the Battery Lifting Beam would be used" because "the product description on their own website defines the exact particular purpose for which [Plaintiff] used it," *id*. at 6, and that the Battery Lifting Beam "is a specialized tool for a very specific operation: lifting batteries that are several thousand pounds heavy," *id*.  It is clear that Plaintiff in his complaint alleges nothing more than utilization of the Battery Lifting Beam in the manner in which it is ordinarily used: lifting forklift batteries.  Thus, he has failed to allege a "particular purpose" which "differs from the ordinary purpose for which the goods are used," 810 ILCS 5/2-315 cmt. n.2.  Accordingly, Defendant's motion to dismiss Count IV is granted.[10]

---

[10] In responding to Defendant's argument that Count IV should be dismissed because Plaintiff "fails to allege that Comprehensive Logistics communicated any specific purpose to [Defendant] and that [Defendant] selected a particular lifting beam to meet that purpose," Def.'s Mot. Dismiss 6, Plaintiff contends that "a buyer is not required to be upfront to the seller about the particular purpose for which the product is intended to be used for or about his reliance on the seller's skill and judgment, if the circumstances are such that the seller has reason to realize the purpose intended or that the reliance exists."  Pl.'s Resp. Mot. Dismiss 6.  It is not necessary for the Court to address whether such circumstances exist here because at most, Plaintiff has alleged Defendant was aware that Plaintiff was using the Battery Lifting Beam for its ordinary purpose of lifting batteries, not for any other particular purpose, as required under the statute.  *See* 810 ILCS 5/2-315 cmt. n.2.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Counts III and IV of Plaintiff's complaint, ECF No. 5, is GRANTED IN PART and DENIED IN PART.  Count IV is dismissed. Count III survives.

Entered this 10th day of March, 2021.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
